[Civ. No. 20466.   First Dist., Div. One.   Apr. 25, 1962.]

JOHN OVALLE, Petitioner, v. SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent.

Thomas J. Sheahan and Calfee & Westover for Petitioner.

Stanley Mosk, Attorney General, John S. McInerny and John F. Foran, Deputy Attorneys General, for Respondent.

TOBRINER, J.— This petition for prohibition urges that an arrest without a warrant cannot be based upon the ground that, although the information prompting petitioner's arrest came from an unknown informer, the fact that the informer was in custody improved his reliability and afforded probable cause for the arrest. We shall set forth our reasons for concurring with this contention of petitioner; we must, however, deny the writ because petitioner himself, as we shall show, interposed objections to testimony which might have disclosed probable cause for the arrest.

On December 2, 1961, Agent McBee and Agent Woishnis of the State Bureau of Narcotics Enforcement and certain members of the Oakland Police Department arrested one Bernadino Flores, for the offense of possession of marijuana. At the time of arrest, the officers found approximately twelve cans of marijuana, plus marijuana cigarettes in his automobile.

Following his arrest, Flores engaged in a conversation with Agents McBee and Woishnis, informing them that he had obtained approximately a kilo of marijuana from petitioner in Richmond about two days prior to his arrest, and stating that petitioner came out of the garage of his residence and handed the marijuana to him wrapped in newspaper. Flores informed the officers that he obtained the marijuana on a consignment basis from petitioner at a cost of $180 and still owed an amount in excess of $100. The agents alleged that Flores supplied them with petitioner's telephone number. Flores could not recall petitioner's address but described the house in detail and gave its approximate location. Flores further informed the agents that he understood petitioner to have enough marijuana to last until Christmas and estimated the

amount to be 20 kilos. Flores also said he had known petitioner in Texas and had been in prison with him.

In addition to the information supplied by Flores, Agent McBee attempted at the hearing to relate certain information that Agent Woishnis had given him, but petitioner prevented the introduction of the evidence. Thus Agent McBee testified: "additionally prior to this time of having received this information from Mr. Flores I had been advised by Agent Woishnis," at which point petitioner objected to further testimony.

The record shows that Agents McBee and Woishnis proceeded to Richmond and located the house that Flores had described to them. They ascertained the address to be 3827 Wall Street. They then proceeded to the Richmond Police Department to obtain assistance. While there they looked up in the reverse telephone directory the telephone number which Flores had given them and found the number listed to a J. Ovalle at 3857 Wall Street. Accompanied by a Richmond police officer, Agents McBee and Woishnis then proceeded to 3827 Wall Street, arriving at approximately 11 p.m. They noted that lights were on in the house and that a radio played loudly. They knocked but received no response. They staked out the residence.

The officers waited until after 3:30 a.m. of December 3, 1961, and then drove the Richmond police officer back to the station and returned to the stake out. They ascertained that at this time the house was occupied; they knocked on the door. In response petitioner answered. The agents identified themselves and informed him that they possessed information that "he was involved in narcotics" and that marijuana was perhaps on the premises. Petitioner asked the agents whether they had a search warrant. Agent Woishnis answered, "No." The agents then requested petitioner's permission to search the house. Petitioner refused and informed the officers that they must leave the premises since they did not have a warrant for arrest or search. They then informed Ovalle he was under arrest.

The officers searched the premises. In the basement they found a quantity of vegetable material on three different shelves. A subsequent analysis of the substance disclosed that it was marijuana.

Petitioner was then held to answer for violation of section 11530 of the California Health and Safety Code (possession of marijuana). On January 22, 1962, petitioner was arraigned in the Superior Court of Contra Costa County, at which time

he moved for dismissal pursuant to section 995 of the Penal Code. The court denied the motion. Petitioner thereafter brought this writ of prohibition.

We shall first point out that reasonable cause to justify an arrest without a warrant cannot be based solely upon information obtained from a previously unknown informant and that the fact that the informant has been arrested and is in custody adds nothing to his reliability. We shall then show, however, that since petitioner blocked, by objection, the introduction of testimony which the officer sought to advance as grounds for probable cause, petitioner cannot coincidentally insist upon a lack of such probable cause.

The California cases clearly hold, and the parties agree, that information supplied by an unknown or unreliable informer will not in itself justify a search without a warrant. (*People* v. *Goodo* (1956) 147 Cal.App.2d 7 [304 P.2d 776].) Respondent's attempt to avoid this principle, upon the ground that the informant here had been arrested and taken into custody, must fail. The court in *People* v. *Amos* (1960) 181 Cal.App.2d 506 [5 Cal.Rptr. 451] succinctly disposes of the argument: ''To hold that the information here furnished by . . . [the arrestee] was sufficient to establish reasonable cause would be in effect to accord to a nonreliable informant who was in the toils of the law a greater degree of reliability than is attributed to such an informant who is not thus encumbered. The fact that the arrestee had narcotics in his possession at the time of his arrest hardly makes him more trustworthy.'' (P. 509.)

Respondent attempts to distinguish *Amos* from the instant case upon the ground that, there, the informer told the officers no more than that he obtained the marijuana from the defendant whereas, here, the informer said that he ''was involved in some type of joint venture'' with petitioner. Moreover, there, the officers did not have any information that the defendant possessed marijuana; here, they did. The more elaborate nature of the information gleaned from the informant by the officers in the present case does not differentiate it from the *Amos* situation in which the officers obtained less. The vice of the police action lies not in the kind of information procured but in the unreliability of the source. The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it.

As we have pointed out *supra,* respondent cannot successfully rely upon the information of the arrestee as the basis for probable cause; at the same time, petitioner cannot show that the officers lacked such cause in the face of his prevention of the introduction of testimony which might have proven it.

When Agent McBee sought to justify the arrest upon the basis of advice he had received from Agent Woishnis, petitioner objected to the testimony upon the ground that it was hearsay. Yet reasonable cause may consist of information obtained from others; it is not confined to evidence that would be admissible on the issue of guilt at the trial. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577].) The opinion of Justice Traynor as to the analogous situation in *People* v. *Boyles* (1955) 45 Cal.2d 652, 656 [290 P.2d 535], becomes applicable: "Thus in the present case it is entirely possible that the officer's belief that defendant had narcotics in her possession was fully justified by reliable information obtained by him from others in carrying out his duties. Since defendant successfully prevented the prosecution from presenting such evidence, if any, she cannot now contend that the evidence before the committing magistrate was necessarily illegally obtained and therefore insufficient to support the information."

While it is true that in *Boyles,* when the officer testified that he believed a felony was being committed and the prosecution asked for his reasons for his belief, the defense objected, and while the question here did not directly ask for the officer's grounds for such belief, the substance in both cases was the same. The whole purport of the testimony of the officer here was to demonstrate the basis for the arrest. Any distinction between the cases on this theory would be artificial.

We need not, and do not, rely upon respondent's final point that petitioner's alleged silence when confronted by the officers constituted additional evidence sufficient to support probable cause for arrest. Respondent contends that although the arresting officers accused petitioner of dealing in narcotics and having marijuana on the premises, he remained silent. The record shows, however, that he was not silent in the face of the accusation but asked if the officers had a search warrant. Thus, Agent McBee stated: "Mr. Orvalle made no response to the fact that we had made the statement to the effect that we had heard he had narcotics on the premises. He did ask if we had a warrant or search warrant. . . ."

In substance, we cannot say that a petitioner who

objects to the introduction of hearsay testimony that may establish probable cause for arrest may successfully and simultaneously complain of the alleged lack of such cause.

The alternative writ of prohibition is discharged and the peremptory writ is denied.

Bray, P. J., and Sullivan, J., concurred.