[Crim. No. 23195. Sept. 13, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
JEFFREY MICHAEL CAMPA, Defendant and Respondent.

872

874

COUNSEL

John K. Van de Kamp and Robert H. Philibosian, District Attorneys, Donald J. Kaplan and Roderick W. Leonard, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Leslie Falick, Leighton A. Nugent and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

OPINION

GRODIN, J.—Defendant Jeffrey Michael Campa was arrested in his home pursuant to warrant on charges of murder and attempted murder (Pen. Code, §§ 187 and 664/187)[1] and taken to a police station where, after extensive interrogation, he made a statement admitting complicity in the

---

[1] All references, unless otherwise noted, are to the Penal Code.

crime. In a pretrial proceeding pursuant to section 1538.5,[2] the trial court ordered his statement suppressed on the grounds that the arrest was illegal because the affidavit in support of the warrant failed to establish probable cause. The trial court also ruled that the statement should in any event be suppressed at trial because the interrogation was conducted in violation of defendant's rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. When the People conceded that they had no other evidence to sustain a conviction, the trial court dismissed the charges on its own motion (§ 1385), and the People have appealed.

Since the alleged crime occurred prior to the adoption of Proposition 8 (initiative measure, June 1982 Primary Election), we have no occasion to consider the impact of that measure upon otherwise applicable principles of California constitutional law. (*People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149].) Under those principles, as we shall explain, the trial court's suppression ruling based upon the insufficiency of the warrant affidavit was correct, and we shall affirm.

On April 4, 1981, a green van pulled alongside a blue Camaro on Figueroa near Avenue 41 in Los Angeles. After a brief exchange of words between a passenger in the van and the driver of the Camaro, the van passenger fired at least four shots into the Camaro, wounding the driver and killing a passenger.

Subsequent investigation led, on April 26, 1981, to the arrest and detention of Richard Martinez, whose parents owned a van matching the description of the one involved in the shooting. Martinez was informed that he was under arrest for murder, and under police questioning, he admitted his participation in the incident, but stated that Jeffrey Campa had actually done the shooting. Prior to Martinez's statement, the police had no information implicating Campa in the shooting.

The same day, April 26, 1981, the police obtained an arrest warrant for Campa. Juan Villanueva of the Los Angeles Police Department completed

---

[2]Campa's section 1538.5 motion was submitted on transcripts of two preliminary hearings. At the first preliminary hearing defense counsel requested that a taped conversation between Campa, the police, and a deputy district attorney be played and made part of the record. The magistrate denied this request because defense counsel had not prepared a transcript of the tape. Thereafter, a section 995 motion was granted. During the second preliminary hearing a transcript of the conversation was admitted into evidence.

Prior to trial it was agreed that the court would hear a motion under section 1538.5 to suppress any statements resulting from Campa's allegedly illegal arrest. It was stipulated that the transcripts of both preliminary hearings could be read and considered by the court. The court granted the section 1538.5 motion, ruling the arrest illegal, and suppressed all statements Campa subsequently made to the police.

the affidavit in support. The affidavit explained the shooting incident, then continued:

"On April 26, 1981 your affiant executed the above Search Warrant and recovered the vehicle used by the suspects in the shooting death of Edward Nunez. Your affiant also arrested Richard Martinez within the residence for 602 W.I.C. 187 P.C. (Murder). After waiving his Constitutional Rights at Central Police Facilities Richard Martinez admitted his participation in the above crime being investigated and also advised your affiant that the person who actually shot Edward Nunez was known to him (Martinez) as Jeff Campa who is approximately 18 years of age. Your affiant obtained a photograph of a person known to your affiant as Jeffrey Michael Campa, a male Mexican with a DOB of 7-4-62 (18 years) who resides at 2625 Carleton Avenue, Los Angeles. Upon viewing this photograph of Jeffrey Michael Campa, Richard Martinez advised your affiant that the person depicted in the photograph was the same Jeff Campa who shot Edward Nunez on April 4, 1981 from within the vehicle which Richard Martinez was driving. . . ."

Attached to the affidavit were a crime report, a death report, and a photo of Campa. The only description of the gunman on the crime report is "a male Latin 17-20 years old brown hair wearing a white T-shirt."

Campa was arrested at his home at approximately 4:30 p.m. on April 26, 1981. He was placed in a holding tank for about 15 minutes. He was then moved to an interview room.

Villanueva testified that at some time shortly after entering the interview room, Campa asked, "Do I have a right to a lawyer?" Villanueva responded that Campa did have a right to a lawyer, but that Villanueva would first explain to him why he had been arrested, then advise him of his constitutional rights, then interrogate him. Villanueva then told Campa that he was under arrest in connection with a murder, that Martinez had told the police Campa had done the shooting, and that, based on the evidence he had, Villanueva believed that Campa had done the shooting.

Campa and Villanueva then listened to the Martinez tape. Afterwards, Campa asked, "Can I go to YA, if I talk?" By "YA" Villanueva understood him to mean Youth Authority.

Up to this point, other than in response to Campa's direct inquiry whether he had the right to a lawyer, the police had not advised him of or obtained waivers of his Fifth Amendment right against self-incrimination or his Sixth Amendment right to counsel as required by *Miranda* v. *Arizona, supra,* 384 U.S. 436. Villanueva responded to Campa's question about the Youth Au-

thority by stating that, as a police officer, he had no authority to say where he would go but if Campa wished Villanueva would request that a representative of the district attorney's office come to the police station to talk to him. Campa agreed. The police escorted Campa back to the holding tank for approximately 40 minutes. Shortly before 6 p.m., Deputy District Attorney Peter Berman arrived at central station.

Campa asked if he would go to prison if he talked. Berman replied that he could be considered for California Youth Authority but that such an outcome was unlikely. Berman asked, "Do you want to make a statement at this time?" Campa replied, "Um, yeah." At this point, at Berman's suggestion, Villanueva advised Campa of his constitutional right to remain silent, and gave him the other warnings required by *Miranda*. Campa stated that he understood his rights and waived them and made a statement in which he admitted doing the shooting in the April 4 incident.

The trial court granted Campa's section 1538.5 motion to suppress his statement as fruit of an unlawful arrest on the basis that there was insufficient probable cause for the issuance of the arrest warrant. The court noted that the affidavit presented unreliable hearsay information from an untested informant. We agree with the court's determination.

█ Section 1538.5, subdivision (i), endows the defendant with the right to obtain a determination by the superior court as to "the validity of a search or seizure de novo on the basis of the evidence." On review, we apply the same standard which governed the trial court: "The magistrate's order issuing the warrant may be set aside only if the affidavit, *as a matter of law, does not establish probable cause*." (*People v. Superior Court (Corona)* (1981) 30 Cal.3d 193, 203 [178 Cal.Rptr. 334, 636 P.2d 23], italics added.)

We note at the outset that defendant was arrested at his home. It was undoubtedly for this reason that the police obtained an arrest warrant in this case. █ As a general matter, "[a] peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person arrested has committed a felony." (*People v. Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583], citing § 836, subd. 3.) However, in *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], we held that article I, section 13 of the California Constitution and the Fourth Amendment of the federal Constitution prohibit warrantless arrests within the home, even upon probable cause, in the absence of exigent circumstances. Subsequently, the United States Supreme Court adopted the same position in *Payton v. New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371]. "It is axiomatic that 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is

directed.'" (*Welsh* v. *Wisconsin* (1984) — U.S. —, — [80 L.Ed.2d 732, 742, 104 S.Ct. 2091] quoting *United States* v. *U.S. District Court* (1972) 407 U.S. 297, 313 [32 L.Ed.2d 752, 764, 92 S.Ct. 2125].)

■ Whether an arrest is made pursuant to or in the absence of a warrant, however, it must be upon a showing of probable cause. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation . . . ." California Constitution, article I, section 13, and Penal Code section 813 contain similar provisions. ■ An arrest warrant which is not supported by a showing of probable cause must fail, and an arrest made pursuant to it is illegal. (*People* v. *Sesslin* (1968) 68 Cal.2d 418, 424-425 [67 Cal.Rptr. 409, 439 P.2d 321].)

■ ■ ■■■ "In determining the sufficiency of an affidavit for the issuance of a . . . warrant the test of probable cause is approximately the same as that applicable to an arrest without a warrant, . . . namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused." (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)[3]

■ "A . . . warrant is issued without probable cause, and therefore in violation of constitutional proscriptions, when the affidavit upon which it is based contains no competent evidence sufficient to support the finding of the magistrate. [Citations.] The indicated questions of competency and sufficiency are questions of law. [Citations.]" (*People* v. *Scoma* (1969) 71 Cal.2d 332, 336 [78 Cal.Rptr. 491, 455 P.2d 419].) ■ The question to be resolved in this case, therefore, is whether the affidavit here contained sufficient evidence to support a finding of probable cause.

■ When an affidavit is based upon hearsay information, any analysis of the competency and sufficiency of the evidence necessarily involves considerations of the credibility of the informant and the probative value of his information. We have stated that "for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a . . . warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) *the affidavit must contain some underlying factual information from which the magistrate issuing the war-*

---

[3]*Skelton* involved a search warrant, but the same standards of probable cause apply whether the warrant is issued for an arrest or for a search. (See *People* v. *Sesslin, supra,* 68 Cal.2d 418, 424.)

*rant can reasonably conclude that the informant was credible or his information reliable."* (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681], italics added.)

*Hamilton* and subsequent cases have relied upon decisions of the United States Supreme Court articulating an essentially identical two-part test. (See, e.g., *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641-642, 89 S.Ct. 584].) It would be a mistake, however, to suppose that California law in this area is solely derived from *Aguilar* and *Spinelli* and their United States Supreme Court progeny. Rather, *"Aguilar's* two-pronged test" (*Spinelli, supra,* 393 U.S. at p. 413 [21 L.Ed.2d at p. 642]) has provided a convenient shorthand articulation of previously established principles of California law in the area of hearsay affidavits.

In *People* v. *Scoma, supra,* 71 Cal.2d 332, 337, for example, this court cited *Aguilar* and *Spinelli* but also relied upon earlier California cases for the proposition that "a warrant may not stand . . . if the affidavit is based upon information provided by an informant and fails to state facts from which the magistrate could reasonably conclude that such information is reliable." Pre-*Aguilar* California decisions establishing that the uncorroborated information of untested informants does not supply probable cause either for issuance of a warrant or for a warrantless arrest or search include *Willson* v. *Superior Court* (1956) 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Amos* (1960) 181 Cal.App.2d 506 [5 Cal.Rptr. 451]; and *Ovalle* v. *Superior Court* (1962) 202 Cal.App.2d 760 [21 Cal.Rptr. 385]. This principle has been derived not only from our interpretation of the Fourth Amendment, but also from the corresponding provision of our state Constitution, article I, section 13. (See, e.g., *Scoma, supra,* 71 Cal.2d at p. 335, and *Reeves, supra,* 61 Cal.2d at p. 275.)

■ In this case, as in *Scoma, supra,* 71 Cal.2d 332, the affidavit clearly satisfied the first part of *Aguilar's* two-part test. Martinez is described as an admitted participant in the crime who spoke with personal knowledge of Campa's culpability. The affidavit is insufficient as a matter of law, however, in that it provides no information from which a magistrate could reasonably conclude that Martinez was credible or that his information about Campa was reliable.

Martinez is described only as an arrested suspect charged with murder. There is no indication that the police had ever had prior contacts with Martinez establishing his record for reliability (see *Jones* v. *United States* (1960)

362 U.S. 257, 270-271 [4 L.Ed.2d 697, 707-708, 80 S.Ct. 725, 78 A.L.R.2d 233]) nor is there any corroborative information implicating Campa from independent sources or from police investigation (see *Spinelli, supra,* 393 U.S. at pp. 417-418 [21 L.Ed.2d at p. 644]; *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387, 395 [107 Cal.Rptr. 483, 508 P.2d 1131]). Finally, the affidavit provides no factual background information about the circumstances under which Martinez's statements were made to allow the magistrate to make an informed evaluation of his reliability or the credibility of his information.

In *People* v. *Amos, supra,* 181 Cal.App.2d 506, and *Ovalle* v. *Superior Court, supra,* 202 Cal.App.2d 760, informants in police custody on drug charges gave information implicating others as the source of the contraband. In determining that such information provided insufficient probable cause for a warrantless search, the *Amos* court observed: "[i]nformation such as here provided simply serves to point the finger of suspicion at a particular person and ordinarily results in surveillance or investigation of the suspect. If the investigation or observation of the suspect tends to confirm the report of the informant whose reliability has not been established a lawful search or arrest may be made provided the combined information gives reasonable cause therefor. [Citation.] But in the instant case the officers observed no act or conduct on the part of the defendant that tended to indicate he was violating the law. [Citation.] [¶] . . . To hold that the information here furnished by [the arrestee] was sufficient to establish reasonable cause would be in effect to accord to a nonreliable informant who was in the toils of the law a greater degree of reliability than is attributed to such an informant who is not thus encumbered." (*Amos, supra,* 181 Cal.App.2d at pp. 508-509.)

In *Ovalle, supra,* 202 Cal.App.2d 760, Justice Tobriner observed "reasonable cause . . . cannot be based solely upon information obtained from a previously unknown informant and . . . the fact that the informant has been arrested and is in custody adds nothing to his reliability." (*Id.,* at p. 763.)

The People argue that Martinez's credibility is established by indications that he spoke against his penal interest in implicating himself in the shooting. This contention, however, fails to withstand critical analysis.

The source of the theory that statements against an informant's penal interest are sufficiently reliable to establish probable cause for a search or arrest is Chief Justice Burger's plurality opinion in *United States* v. *Harris* (1971) 403 U.S. 573, 583 [29 L.Ed.2d 723, 734, 91 S.Ct. 2075]: "Admissions of crime, like admissions against proprietary interests, carry their own

indicia of credibility—sufficient at least to support a finding of probable cause to search." While this proposition has some logical appeal, it cannot be applied mechanically without consideration of the setting in which the admission appears. There is a vast difference between an informant who comes in off the street to confess complicity in a crime and identify his confederate, and one who, caught with inculpatory evidence, identifies someone else as the principal culprit.

Information received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect. "All familiar with law enforcement know that the tips they provide may reflect their vulnerability to police pressure or may involve revenge, braggadocio, self-exculpation, or the hope of compensation." (*People* v. *Kurland* (1980) 28 Cal.3d 376, 393 [168 Cal.Rptr. 667, 618 P.2d 213], and cases cited therein.) ██ Justice Harlan made similar observations in his dissenting opinion in *Harris, supra,* 403 U.S. 573, in which he stated: "I am inclined to the view . . . that magistrates may not properly predicate a determination that an unnamed confidant is credible upon the bare fact that by giving information he also confessed to having committed a crime." (*Id.,* at p. 595 [29 L.Ed.2d at p. 741].)[4]

The rationale of Justice Burger's theory in *Harris, supra,* lies in the notion that rational people are unlikely to make false statements against their own penal interests. So far, the logic is compelling. But this rationale breaks down in a situation where a declarant in police custody seeks to exculpate himself by implicating another suspect.

We have considered a similar problem in an analogous context. ██ California law recognizes that evidence of declarations against penal interest may be admitted as an exception to the hearsay rule. (Evid. Code, § 1230; *People* v. *Spriggs* (1964) 60 Cal.2d 868, 875 [36 Cal.Rptr. 841, 389 P.2d 377].) But in this context, we have recognized that the trustworthiness of such declarations is limited and that the hearsay exception should not apply to collateral assertions within declarations against penal interest. (*People* v. *Leach* (1975) 15 Cal.3d 419, 439 [124 Cal.Rptr. 752, 541 P.2d 296].) In light of the high probability of unreliability which characterizes such "collateral assertions" (see *id.,* at pp. 439-440, fns. 15 & 16), we have construed the hearsay exception "to be inapplicable to evidence of any state-

---

[4]*Harris* involved an unnamed informant but, as we observed in *Scoma,* "[w]hether an informant is named or unnamed is immaterial insofar as the showing of probable cause is concerned except as to the extent that his identity bears upon his reliability. . . . The question, whether or not the informant is named, is whether his information is reliable. [Citation.]" (*Scoma, supra,* 71 Cal.2d at p. 337, fn. 6.)

ment or portion of a statement not itself specifically disserving to the interests of the declarant." (*Id.,* at p. 441.)

*People* v. *Shipe* (1975) 49 Cal.App.3d 343 [122 Cal.Rptr. 701] is illustrative. In that case, two declarants made statements confessing to participation in a murder but accusing defendant Shipe of the actual killing. The court held that, to be admissible against the defendant, such "declarations against penal interest" must be "clothed with indicia of reliability; such indicia of reliability are lacking where the declaration is made to authorities after the declarant has been arrested and charged with a serious offense . . . and where, as here, the statement is exculpatory in the sense that the declarant has blamed a coparticipant for the commission of the greater offense while admitting complicity to some lesser degree." (*Id.,* at p. 354.)

Admittedly, the two situations differ. In a criminal trial, the applicable standard is proof beyond a reasonable doubt. Hence, the question of admissibility of potentially devastating hearsay testimony must be considered within the context of this exacting standard of proof. In the warrant situation, by contrast, the evidence is to be evaluated in light of the lesser standard of probable cause. Nonetheless, the precedents in the hearsay area provide a persuasive reminder that declarations against penal interest may contain self-serving and unreliable information. Thus, an approach which would find a declarant's statement wholly credible *solely because* it incorporates an admission of criminal culpability is inadequate.

The affidavit here contained no factual information relevant to Martinez's credibility *other than* that he was in custody on a murder charge and that he had "admitted his participation in the . . . crime. . . ." It is obvious that a murder suspect in police custody might have reasons to falsely implicate another as the murderer. While we may also surmise that such an arrestee might be motivated to tell the truth, to do so would merely be speculation as to information which, if included, might have made the affidavit sufficient. The fact remains that no such information appeared. The affidavit itself provided no basis upon which to conclude that Martinez's information was credible and it failed to provide the magistrate with the setting in which Martinez's statement was made. Under such circumstances, we must agree with the trial court that the affidavit did not provide probable cause for the issuance of a warrant as a matter of law.

This is not to say that in all such cases the statement of a coparticipant implicating a suspect in criminal activity should be disregarded in finding probable cause for issuance of a warrant. Admissions may be made under circumstances in which their credibility is enhanced. Other "indicia of reliability," such as the arrestee's record for veracity or corroborative

evidence obtained independently may buttress the credibility of an arrestee's statement. Alternatively, the affidavit may provide background information describing the circumstances under which the informant's statement was made. In some cases, this contextual information itself will provide a sufficient basis to support a conclusion that the declarant's information is credible. This affidavit provided no such information.

Nor would Martinez's evidence alone have been necessarily insufficient had the magistrate had the opportunity to examine Martinez personally and decide, for himself, whether he appeared reliable. *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, is a case in point. Like Martinez, the informant in *Skelton* was in police custody. Like Martinez, he implicated a confederate. However, there was no hearsay affidavit in *Skelton.* Rather, the arrestee-informant personally appeared before the magistrate "who consequently had the full opportunity to observe his appearance and demeanor and to question him regarding any relevant matter if he considered this necessary to assure himself of the affiant's credibility." (*Id.,* at p. 152.)

This distinction is crucial. We stated in *Skelton*: "The entire thrust of *Aguilar* and the cases following it is to insure that the actual ability of the magistrate to make an independent judgment of the existence or not of probable cause remains unimpaired. The rule that the factual grounds for believing the hearsay informer be communicated to the magistrate is mandatory if probable cause is, in fact, to be determined 'by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' [Citation.] Here, however, the critical affidavit is not based on unsworn hearsay, but upon statements made under oath, whose origin is clearly in the personal knowledge and observation of the affiant." (*Id.,* 1 Cal.3d at p. 153.) In Campa's case, by contrast, "the critical affidavit" *is* based on unsworn hearsay, obtained out of the presence of the magistrate "by an officer engaged in the often competitive enterprise of ferreting out crime."

(14) We have noted that " '[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " (*People* v. *Superior Court (Corona), supra,* 30 Cal.3d 193, 203, quoting *United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) This is not such a case. The affidavit here is simply too thin to give body to this presumption.

■ Hence, we must agree with the trial court's determination in this case that the warrant was issued without probable cause and that Campa's

arrest was illegal. In addition, we must agree that Campa's extra-judicial statement, obtained as a result of his unlawful arrest, was properly excluded. (*People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872].)[5]

 Because we have determined that the charges against Campa were properly dismissed as a result of his section 1538.5 motion, we do not reach the question of the trial court's ruling on the *Miranda* issue. Although defendant raised a substantial question of the violation of his Fifth Amendment rights (see *People* v. *Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050]), we must reiterate the rule that such questions are not normally reviewable pretrial. (*People* v. *Beasley* (1967) 250 Cal.App.2d 71, 77 [58 Cal.Rptr. 485].)

Defendant's efforts to suppress his extrajudicial statements proceeded on two fronts. His section 1538.5 motion was properly based upon the allegation that the warrant under which he was arrested was insufficient, that his arrest was therefore unlawful, and that the confession obtained as a result of that arrest should be suppressed.

Defendant also sought suppression on the independent basis that his Fifth Amendment right against self-incrimination had been violated. This claim cannot be the basis of a section 1538.5 motion, since section 1538.5 is limited to search and seizure issues. (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733-734 [125 Cal.Rptr. 798, 542 P.2d 1390].) Rather, a pretrial motion to suppress statements obtained in violation of *Miranda* rights is properly regarded as a common law evidentiary motion. (*Id.*, at p. 734.)

The distinction is significant because, unlike a section 1538.5 motion to suppress, a ruling on a common law motion is not normally reviewable pretrial. Sound policy supports this procedural barrier since "[a]n order suppressing evidence . . . is the equivalent of an order sustaining an objection to the same evidence, and is subject to the same procedural rules. These

---

[5]The crime at issue here took place on April 4, 1981, well before the effective date of Proposition 8 on June 9, 1982. For this reason, this case presents no opportunity for discussion of the exclusionary rule in light of Proposition 8. (*People* v. *Smith, supra,* 34 Cal.3d 251, 262.)

And, as noted above, the insufficiency of such an affidavit as involved here to provide probable cause for issuance of an arrest warrant was a well-established principle of California law even prior to *Aguilar* v. *Texas, supra,* 378 U.S. 108. We therefore have no occasion to consider the effect, if any, of the United States Supreme Court's decision in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317] upon the facts of this case.

Rather, we conclude simply that in determining the validity of the warrant, the legality of Campa's arrest and the exclusion of his extrajudicial statements, the trial court properly applied well-established principles of California law.

rules allow the trial court to reconsider, modify or set aside its order at any time prior to submission of the cause (Code Civ. Proc., § 128, subd. 8)." (*Beasley, supra,* 250 Cal.App.2d at p. 77.)

In the instant case, having granted defendant's section 1538.5 motion, the trial court dismissed the action of its own motion pursuant to section 1385. The People's appeal is taken under section 1238, subdivision (a)(7), which by its terms is limited to dismissals based upon statutory suppression motions. Thus, the scope of our appellate review is limited to the correctness of the court's section 1538.5 ruling.

The judgment is affirmed.

Bird, C. J., Broussard, J., Reynoso, J., and Reese, J.,* concurred.

**KAUS, J.**—I dissent with reluctance, since I realize fully that in the long run it will make little difference whether this prosecution aborts because of a defective arrest warrant or the painfully obvious *Miranda-Honeycutt* violation disclosed by the record.

In brief, I believe that the court's opinion draws too heavily on the law relating to declarations against interest as an exception to the hearsay rule, while giving insufficient weight to the facts of this particular case and the very limited purpose for which Martinez' identification of Campa was used. *People* v. *Leach* (1975) 15 Cal.3d 419, 439 [124 Cal.Rptr. 752, 541 P.2d 296] condemned the use of nondisserving portions of declarations against interest at trial, on the issue of guilt. Here we are concerned with probable cause justifying an arrest and our only point of contact with the exception to the hearsay rule is the commonsense notion that when people make statements which are clearly against their interest, the chance that they are telling the truth is comparatively good.

What the majority ignores when talking in the abstract about declarants in police custody who seek to exculpate themselves by implicating others, is that in this case the material furnished the magistrate permitted him to infer that Martinez had admitted everything that was his to admit. The police report, which was incorporated in the affidavit in support of the warrant, contained a statement from a "citizen" informant that it was the passenger in the van, not the driver, who had done the shooting. The magistrate was also informed that a previous warrant, issued by another magistrate, had

---

*Assigned by the Chairperson of the Judicial Council.

resulted in the recovery of the van, as well as the arrest of Martinez. From these facts alone it is reasonably inferrable that Martinez was the driver of the van—which is precisely what Martinez admitted after his arrest. Thus his reliability does not depend solely on the incriminating nature of his admission but rests also on the fact that the extent of the admission corresponds to the apparent degree of his actual involvement in the shooting, as reflected in independent information obtained by the police.

There is no question that under *Leach,* Martinez' extrajudicial identification of Campa as the triggerman would not be admissible because it was not "specifically disserving to the interest of the declarant." (*People* v. *Leach, supra,* 15 Cal.3d at p. 441.) As already noted, however, we are not concerned with admitting an incriminating statement at trial which, if believed, could send a man to prison: our sole concern is whether the statement, *viewed in context,* is sufficient to give rise to probable cause to make an arrest. Thus I would grant that if nothing submitted to the magistrate negatived the possibility that Martinez was trying to exculpate himself by implicating Campa as the triggerman, the warrant should not have issued.[1] That, however, was not the case. The magistrate could infer from all that was submitted to him that Martinez was, indeed, only the driver, precisely as he had admitted. His reliability as an informant was at least as great as that of the typical narcotics user who, for whatever reason, has correctly fingered other users or dealers in the past: while few would stake their lives on the accuracy of his next bit of news about one of his fellow junkies, we have held time after time that as long as he purports to speak with personal knowledge, his say-so is sufficient to authorize the issuance of a warrant. (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 21-22 [76 Cal.Rptr. 809, 453 P.2d 353].)

---

[1] In making this concession, I appear to differ with Professor LaFave whose views concerning the veracity of persons in Martinez' position are a good deal more sanguine than those of the court: "It is true, of course, that these individuals typically provide information after they have been apprehended by the police and after it is apparent to them that the police already know of their own involvement in the serious offense. It might be said, as the Supreme Court said of accomplice accusations in another context, that this information is 'inevitably suspect, . . . given the recognized motivation to shift blame onto others.' [*Bruton* v. *United States* (1968) 391 U.S. 123 (20 L.Ed.2d 476, 88 S.Ct. 1620).] This is a legitimate cause for concern, but it is well to note that the danger is less here than in the at-trial setting about which the Court was speaking. For one thing, a fabrication of false accusations purporting to involve others in one's criminal activities is less likely to occur on the spur of the moment following arrest than upon that later occasion. (Indeed, it may be stated as a general proposition that a 'spontaneous' admission against penal interest is more deserving of reliance.) For another, the effort to 'shift blame' is more likely to amount to an overstatement of the influence and control wielded by actual accomplices than the naming of persons who were in fact not involved at all, and these misstatements, even if they occur, are not likely to distort the facts bearing directly upon the probable cause determination." (Fns. omitted.) (LaFave, Search and Seizure (1978) § 3.3, pp. 527-528.)

I would reverse.

Mosk, J., concurred.