Filed 4/24/25  P. v. Monzon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082553 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF005432) |
| DAVID ANTONIO MONZON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Rex A. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Juliet W. Park, Deputy Attorneys General for Plaintiff and Respondent.

I

INTRODUCTION

David Antonio Monzon appeals a judgment of conviction after a jury found him guilty of resisting an executive officer with force or violence in violation of Penal Code section 69.[1]  Monzon contends the evidence from his trial was insufficient to support the jury's finding that he resisted an officer who was acting lawfully at the time of the offense.  In particular, he argues the officer unlawfully entered his residence without a warrant or exigent circumstances justifying a warrantless entry into the residence.  Further, he argues the officer did not have probable cause to arrest him.  We reject these arguments and affirm the judgment.

II

BACKGROUND

A. *Factual Background*

We present the following factual background in the light most favorable to the judgment because Monzon contests the sufficiency of the evidence supporting his conviction.  (*People v. Lee* (2011) 51 Cal.4th 620, 625, fn. 5.)

One evening, a woman called 911, identified herself as "Sandy," and reported a domestic disturbance at a two-story apartment complex in Imperial.  The caller said she heard a male yelling at a female and items being thrown around inside an upstairs apartment.  The caller also stated that a juvenile was inside the apartment.[2]

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    It was later discovered that the 911 caller who reported the incident was J.T., Monzon's significant other and the mother of his children.

Imperial police officer Deanna Caldwell was dispatched to the apartment complex and advised of the information reported on the 911 call. She wore her police uniform and drove a marked patrol vehicle to the complex. According to Caldwell, she responded to the dispatch with urgency because the 911 caller had reported a domestic disturbance and she hoped to prevent an escalation of the dispute.

When Caldwell arrived at the scene, she saw Monzon seated beneath an exterior stairwell near the front door of his downstairs apartment. Caldwell went to the upstairs apartment identified by the 911 caller, but did not see lights on in the apartment or hear sounds coming from the apartment. She rang the apartment's electronic doorbell and spoke to the homeowner through the doorbell's intercom. The homeowner said nobody was home at her apartment, but she recommended that Caldwell check the apartment beneath hers—Monzon's apartment—because arguments had taken place there in the past.

Caldwell went downstairs to speak to Monzon, who was still seated beneath the exterior stairwell. Several empty beer cans surrounded him. Caldwell asked Monzon if everything was okay. He quickly stood up and put his hand two or three inches from her face in an agitated and aggressive way, which made Caldwell believe Monzon was trying to hit her. She moved his hand away from her face and he said, "don't touch me, bitch."

Caldwell explained she was investigating a domestic disturbance and wanted to ensure there was nobody injured or in need of medical attention inside the apartment. Monzon continually spoke over Caldwell, yelled at her, called her vulgar names, and repeatedly said he did not want to talk to her. He then walked into his apartment. As Monzon opened the front door, Caldwell observed kitchen pots and pans strewn across the floor. She also

3

heard him turn the lock on the doorknob, which suggested he intended to close and lock the door on her.

Caldwell placed her foot inside the doorframe to prevent Monzon from closing the door. He tried to shut the door several times by continuously and forcefully shoving the door into her foot, which caused her to sustain a minor foot injury. Still, Caldwell did not remove her foot from the doorframe. Monzon yelled at Caldwell and continued acting in an agitated and aggressive manner. He also began recording the encounter on his phone and demanded to speak with a police supervisor.

As Caldwell and Monzon struggled with one another at the doorway, Caldwell observed a middle school aged boy peeking out from behind Monzon. The boy seemed frightened and quickly retreated inside a bedroom. Soon after, a sliding patio door opened near the front door. Caldwell—who by then had lost sight of the boy—believed the boy exited the apartment through the patio door. Monzon yelled after the boy to go back inside the apartment and refrain from talking to the police.

Caldwell tried to calm Monzon down and repeatedly instructed him to stop slamming the door into her foot or she would tase him. She also requested expedited backup units from dispatch over the radio. Caldwell's requests to dispatch did not transmit clearly, likely due to a bad radio connection, her ongoing struggle with Monzon, or both. Nevertheless, Corporal Robert Martinez immediately left the Imperial police station in uniform and drove his marked patrol vehicle to the complex. He was aware of the 911 call and believed Caldwell might be in danger because it sounded like she was struggling in her garbled radio communications and she was not responding to incoming radio communications from dispatch. Before arriving

4

on the scene, Martinez learned Caldwell had requested expedited backup units and a suspect was attempting to shut an apartment door on her.

Corporal Martinez arrived at the apartment complex within minutes of Caldwell's call for expedited backup units. Upon his arrival, he observed Caldwell struggling to keep the apartment front door open with her shoulder and foot while Monzon tried to shut the door on her. Martinez kicked open the door and, for about 20 seconds, he repeatedly instructed Monzon to get on the ground. Monzon refused to get on the ground, yelled and cursed at the officers, demanded to speak with a supervisor, and continued recording the interaction with his phone.

The officers entered the apartment and corporal Martinez reached for Monzon's hand to arrest him for obstructing an investigation. Monzon pulled his hand away and retreated a few steps into the apartment. Martinez told Monzon to relax and reached for Monzon's arm, but Monzon pushed Martinez back and continued to resist. A struggle ensued and Martinez took Monzon to the ground. Caldwell tried to put Monzon in a wrist lock to handcuff him, but Monzon kept fighting the officers.

At that point, Caldwell tried to use her taser on Monzon. However, the taser did not deploy properly and Monzon detached one of the taser prongs from his body. Monzon continued fighting with Martinez and resisted calls to place his hands behind his back. He reached towards Martinez's duty belt in an apparent effort to grab his taser, so Caldwell deployed her taser on Monzon again. This time the taser deployed properly and disabled Monzon. Soon after, a third officer arrived on the scene and assisted his colleagues in handcuffing Monzon. The officers took Monzon outside as he continued to argue and yell at them. Martinez suffered injuries to his elbows, his left arm, and his left rib from the struggle with Monzon.

5

After Monzon was taken outside, officers conducted a protective sweep of the apartment to determine whether anyone else was present. The sliding patio door was open, but nobody else was inside the apartment.

B. *Procedural History*

Monzon was charged by amended information with one count of resisting an executive officer in violation of section 69. After a trial, the jury found Monzon guilty of the offense based on the theory that he violently and forcefully resisted corporal Martinez.[3] In a bifurcated proceeding, Monzon admitted two aggravating circumstances: (1) he served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)); and (2) he was on probation when the crime was committed (*id.*, rule 4.421(b)(4)). The trial court sentenced Monzon to the upper term of three years to be served in county jail.

III

DISCUSSION

A. *Governing Law*

"[S]ection 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*).) In the present case, the jury found Monzon violated section 69 in the second way by forcefully or violently resisting corporal Martinez in the performance of his duty.

"The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further

---

[3]  On the verdict form, the jury did not find Monzon guilty of violating section 69 based on the theory that he willfully and unlawfully attempted to deter officer Caldwell from the performance of a future duty by means of a threat of force or violence.

6

requires that the officer was acting lawfully at the time of the offense." (*Smith, supra*, 57 Cal.4th at p. 241; see *In re Manuel G.* (1997) 16 Cal.4th 805, 815 ["The longstanding rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer ' "*engaged in ... the performance of ...* [his or her] *duties*" ' unless the officer was acting lawfully at the time the offense against the officer was committed."].) An officer acts unlawfully if he or she enters a person's residence without a warrant to conduct an arrest, absent an exception to the Fourth Amendment warrant requirement. (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 777.) An officer also acts unlawfully if he or she arrests a person without probable cause to believe the person has committed a criminal offense. (See *People v. Campa* (1984) 36 Cal.3d 870, 879 ["Whether an arrest is made pursuant to or in the absence of a warrant … it must be upon a showing of probable cause."].)

" 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence—that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt.' [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' [Citation.] 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' [Citation.] We do not question the credibility of a witness's testimony, so long as it is 'not inherently

7

improbable,' nor do we reconsider the weight to be given any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)

B. *Substantial Evidence Supported the Conviction*

Monzon challenges the sufficiency of the evidence supporting his conviction and, in particular, the jury's factual finding that corporal Martinez was acting lawfully at the time of the offense. Monzon argues Martinez was acting unlawfully because he entered Monzon's apartment without a warrant and there was no applicable exception to the Fourth Amendment warrant requirement. Alternatively, he claims Martinez was acting unlawfully because Martinez did not have probable cause to arrest him. We address these arguments in turn.

1. *Substantial Evidence Supported a Finding of Exigent Circumstances*

Monzon's primary argument is that Martinez was acting unlawfully at the time of the offense because he entered Monzon's apartment without a search or arrest warrant and the evidence was insufficient to establish an exception to the Fourth Amendment warrant requirement. In response, the People argue that substantial evidence supported a finding that exigent circumstances justified Martinez's warrantless entry into the apartment.

The Fourth Amendment to the United States Constitution, which applies to the states through its incorporation into the Fourteenth Amendment (*People v. Camacho* (2000) 23 Cal.4th 824, 829), provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) "Because the ' "physical entry of the home is the chief evil against which the wording of the

8

Fourth Amendment is directed," ' '[i]t is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable.' [Citation.] This principle extends to warrantless entries." (*People v. Rios* (2011) 193 Cal.App.4th 584, 590.)

"Because a warrantless entry into a home to conduct a search and seizure is presumptively unreasonable under the Fourth Amendment [citation], the government bears the burden of establishing that exigent circumstances or another exception to the warrant requirement justified the entry. [Citation.] [¶] As relevant here, the exigent circumstances doctrine constitutes an exception to the warrant requirement when an emergency situation requires swift action to prevent imminent danger to life. [Citation.] ' "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." …' [Citation.] In this regard, ' " '[t]here is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.' " ' [Citation.] Generally, a court will find a warrantless entry justified if the facts available to the officer at the moment of the entry would cause a person of reasonable caution to believe that the action taken was appropriate." (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156–1157.)

Here, the appellate record discloses substantial evidence from which a reasonable jury could find there were exigent circumstances justifying Martinez's warrantless entry into Monzon's apartment. At trial, Martinez testified he became aware of the contents of the 911 call reporting a domestic dispute before he left the police station for Monzon's apartment. On that call, the caller told the operator that a man was yelling at a woman inside an apartment, a juvenile was inside the apartment, and items were being

9

thrown around. As Monzon notes, a report of a verbal altercation, standing alone, does not inevitably give rise to an objectively reasonable belief that one or more of the individuals involved in the altercation is necessarily or even likely in need of immediate assistance. But here, the 911 caller's reporting of an additional fact—the fact someone was hurling physical objects around the apartment so loudly the caller could hear it outside the apartment—enhanced the prospect that one or more possible victims inside the apartment required immediate aid to prevent or alleviate serious bodily harm.

Moreover, several facts relating to the initial responding officer, Caldwell, suggested swift action was necessary to help or safeguard victims inside the apartment. By the time Martinez arrived on the scene, he was aware Caldwell had requested expedited backup units and had not been answering inbound radio communications from dispatch. In at least some of the garbled radio communications Caldwell sent to dispatch, she sounded like she was in danger. Further, when Martinez arrived, he witnessed firsthand that Monzon was irate and engaged in a tense physical standoff with Caldwell at the threshold to the apartment. During that standoff, Monzon attempted to shove the front door closed on Caldwell, blocking her physical access and line of sight into the apartment. An objectively reasonable officer in Martinez's shoes could easily conclude that Monzon was acting in such an exceedingly agitated, aggressive, and furtive manner because he hoped to conceal from law enforcement that he had inflicted harm on the female and/or the juvenile who were reported to be inside the apartment during the domestic dispute that caused the reporting party to call 911.

*People v. Pou* (2017) 11 Cal.App.5th 143 provides a useful analogy to the present case. In *Pou*, police officers were informed by dispatch about a report of a screaming woman and distressed moaning coming from a home.

10

(*Pou*, at p. 145.) When the officers arrived at the home, they heard people arguing and observed from the outside that two men seemed to be arguing inside the home. (*Id.* at pp. 145–146.) An officer knocked on the door and identified himself as law enforcement, but there was a delay before anyone opened the door. (*Id.* at p. 146.) The man who eventually answered the door told the officers he did not want them to enter the home, but the officers entered without a warrant to ensure everyone inside was unharmed. (*Ibid.*) During the ensuing search of the home, the officers discovered illegal narcotics. (*Ibid.*) Under these circumstances, the *Pou* court concluded "it was objectively reasonable for an officer to believe that immediate entry was necessary to render emergency assistance to a screaming female victim inside or to prevent a perpetrator from inflicting additional immediate harm to that victim or others inside the house." (*Id.* at p. 151.)

Like the officers in *Pou*, Martinez responded to a report of a domestic dispute involving yelling or screaming. From there, additional fact suggested immediate aid was necessary for one or more persons believed to be involved in the dispute. In *Pou*, those factors included the responding officers' audial and visual confirmation that an argument was occurring inside the home and the occupants' delay in opening the front door. Here, those additional factors included the 911 caller's report that items were being thrown inside the apartment, dispatch's inability to contact Caldwell on the scene, the distorted radio communications from Caldwell in which it sounded like she was in danger, Caldwell's request for expedited backup units, and Monzon's aggressive struggle with Caldwell at the threshold of his apartment whereby he sought to prevent her from entering or seeing into the apartment.

Under these circumstances, we conclude there was substantial evidence from which a rational jury could find that exigent circumstances justified

11

Martinez's warrantless entry into the apartment. In short, a jury could reasonably find that the facts known to Martinez at the time of his entry would have caused an objectively reasonable officer to believe swift entry into the apartment was necessary to render immediate assistance or prevent harm to the individuals who were reported to be inside the apartment during the domestic dispute. Therefore, substantial evidence supported the jury's finding that Martinez was acting lawfully at the time Monzon resisted him.[4]

### 2. *Martinez Had Probable Cause to Arrest Monzon*

Monzon also contends the evidence was insufficient to support a finding that Martinez was acting lawfully at the time of the offense because Martinez arrested him without probable cause to believe he had committed a crime.

---

[4] In a footnote in his reply brief, Monzon claims—without citation to legal authority—that Caldwell initially entered his apartment when she placed her foot in the doorframe to prevent him from closing the door. It is unnecessary for us to decide whether this action was lawful, or even an entry, because Monzon does not argue that Caldwell acted unlawfully by placing her foot in the doorframe. Instead, he argues that exigent circumstances did not justify *Martinez's* entry into the apartment.

However, if we were to reach these issues, we would conclude that substantial evidence of exigent circumstances justified Caldwell's purported entry into the apartment. Like Martinez, Caldwell was aware of the 911 call, including the report of items being thrown around. Moreover, Caldwell learned from Monzon's neighbor that arguments had taken place in Monzon's apartment before, Caldwell encountered Monzon in an intoxicated state outside his apartment, Monzon immediately moved his hand towards Caldwell's face like he was trying to hit her, Monzon cursed and yelled at Caldwell when she said she wanted to ensure nobody was injured inside the apartment, and Caldwell observed items strewn across the floor of the apartment—all before she ever placed her foot in the doorframe. Assuming Caldwell's placement of her foot in the doorframe constituted an entry for Fourth Amendment purposes, a rational jury could conclude it was justified by an objectively reasonable belief that swift action was needed to aid possible victims inside the apartment or prevent harm to them.

12

" 'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime. [Citation.] "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts ...." [Citation.] It is incapable of precise definition. [Citation.] " 'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' " and that belief must be "particularized with respect to the person to be ... seized." ' " (*People v. Scott* (2011) 52 Cal.4th 452, 474.)

Here, the arresting officers had probable cause to believe Monzon had committed a crime at the time they entered the apartment and arrested him. According to Caldwell, she initially planned to arrest Monzon for violating section 148—which prohibits a person from willfully resisting, delaying, or obstructing a peace officer in the discharge of his or her duty—after Monzon exhibited verbal aggression, moved his hand towards her face, failed to comply with her commands, and retreated into the apartment, all of which delayed her investigation into whether an injured person required assistance. By the time Martinez arrived, Monzon had started to engage in even more dangerous and problematic efforts to resist the officers. He repeatedly smashed his apartment door into Caldwell's foot, refused Martinez's repeated requests to lie on the ground, and engaged in a tussle with the officers during which he tried to push and hit Martinez, fought with the officers, and ultimately tried to take Martinez's taser. Under these circumstances, the officers had probable cause to believe Monzon had committed one or more crimes by the time they entered the apartment to arrest him.

## IV

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.