Filed 10/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253036 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA082341) |
| v. | |
| REECE J. CLARK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Dorothy L. Shubin, Judge. Affirmed.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Mary Sanchez and Garett A. Gorlitsky, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Reece Clark (defendant) pleaded guilty to possession of cocaine and a short-barreled shotgun. On appeal, defendant contends that the trial court erred when it denied his motion to suppress evidence pursuant to Penal Code section 1538.5 (section 1538.5). According to defendant, the affidavit in support of the search warrant did not establish probable cause to search his residence because, although it showed that he possessed and was cultivating marijuana, it did not address whether the marijuana was possessed or cultivated for medical purposes.[1]

We hold that, even though there was no showing on the issue of whether the marijuana was possessed or cultivated for medical use, the affidavit in support of the search warrant established probable cause to search. Therefore, the trial court did not err in denying the suppression motion. Accordingly, we affirm the judgment of conviction.

## FACTUAL BACKGROUND[2]

The statement of probable cause in support of the search warrant provided the following facts: Los Angeles County Sheriff's Department Deputy Michael Gaisford had extensive training and experience in, inter alia, the field of street level drug sales, including drug recognition. Within 15 days prior to preparing his statement of probable cause, Deputy Gaisford received information from a confidential informant that "an illegal in-door marijuana grow was established in the City of Pasadena" in a residence on

---

[1] Defendant also maintains that the search cannot be justified by the good faith exception established in *United States v. Leon* (1994) 468 U.S. 897. Based on our determination on the probable cause issue discussed below, we do not address that contention.

[2] Because, as explained below, we review a ruling on the sufficiency of the evidence in support of a search warrant based solely on the content of the affidavit upon which the warrant is based, we limit the factual statement to the facts set forth in the affidavit submitted in support of the warrant, as well as certain facts contained in the return to the search warrant which are included to provide context.

2

East Orange Grove Boulevard. The confidential informant told the deputy that defendant lived at that residence and that he maintained the "marijuana grow" in the garage. After questioning the informant, the deputy formed the opinion that he "demonstrated a strong and thorough knowledge regarding marijuana cultivation."

Based on the information provided by the informant, Deputy Gaisford initiated a narcotics investigation at the Pasadena address provided by the informant. The deputy and a detective conducted a surveillance of that residence and observed two vehicles parked there that, according to the informant, defendant owned. They then saw defendant exit the front door of the residence, access one of the vehicles, and reenter the residence.

During their surveillance, the deputy and the detective observed the following facts that were "indicative of an illegal indoor marijuana grow": From the public sidewalk, they could smell a strong odor of "unburnt" marijuana emitting from the garage; according to Deputy Gaisford, "unburnt" marijuana had a "very distinct and pungent" odor that could be easily recognized by both law enforcement and members of the public; Deputy Gaisford also observed a "window mount" air conditioner installed in one of the walls in the garage; although it was a cold winter night when they conducted their surveillance, the air conditioner was running continuously, which appeared unusual because, in the deputy's experience, most garages were "under insulated" and usually the coldest part of the house; based on the deputy's training and experience concerning marijuana cultivation, specifically indoor "marijuana grows," he knew that an indoor marijuana grow room needed a dedicated air conditioner of some sort to cool the room down because the "grow lights" generated an "enormous amount" of heat; because the heat and other by-products from the indoor grow needed to be vented out of the room, it was common for illegal marijuana cultivators to vent the room and turn on the grow lights and air conditioners during night and early morning hours to avoid detection by law enforcement.

In addition to conducting the surveillance, Deputy Gaisford conducted a criminal background check on defendant and discovered that he had been convicted of various criminal offenses. He also conducted a registration check on the two vehicles he

3

observed at the property, and both were registered to defendant at the address of the property.

Based on these facts, Deputy Gaisford formed the opinion that the location was being used to grow, store, and sell marijuana on an ongoing basis. He also formed the opinion that marijuana was present at the location, that a continuing drug operation was being conducted at the location, and that the on-site supply of marijuana and narcotic contraband would be replenished after being harvested and sold.

The return to the search warrant contained additional information. Deputy Gaisford conducted a search of the property a day after the search warrant was issued. During the search, the deputy seized 246 marijuana plants, several bags of harvested marijuana, cocaine, a 12-gauge pump-action shotgun with 25 rounds, a .25 caliber semi-automatic pistol with live rounds, digital scales, drug packaging, paperwork, mail, a cell phone, and an assortment of marijuana grow equipment, including grow lights, light ballasts, a carbon dioxide generator, atmosphere controllers, charcoal air filters, blowers, a water filtration system, and water-based plant nutrients and plant food.

**PROCEDURAL BACKGROUND**

In July 2011, prior to the preliminary hearing, defendant filed a motion to traverse the search warrant and suppress evidence pursuant to section 1538.5 on the ground that the search warrant was issued without probable cause. In October 2011, a magistrate heard and denied the motion.

In November 2011, the trial court conducted a preliminary hearing and ordered that defendant be held to answer. In December 2011, the District Attorney filed the original information.

In June 2012, prior to arraignment, defendant renewed his motion to suppress. In September 2012, the trial court heard and denied that second motion.

In March 2013, defendant filed another motion to suppress pursuant to section 1538.5, which motion is the subject of this appeal. The motion was based on the newly asserted ground that there was no probable cause to support the search warrant because

4

defendant's cultivation of marijuana was legal under the Compassionate Use Act—Health and Safety Code section 11362.5—and there were no facts presented in support of the search warrant that defendant was cultivating marijuana for illegal purposes. In May 2013, the trial court heard and denied the motion. In July 2013, the defendant filed a motion to reconsider his March 2013 motion to suppress. In August 2013, the trial court heard and denied that motion.

Defendant thereafter pleaded guilty to one count of possession of cocaine in violation of Health and Safety Code section 11350, subdivision (a)—count 5—and one count of possession of a short-barreled shotgun in violation of former Penal Code section 12020, subdivision (a)(1), now section 33215—count 8. On count 5, defendant was admitted to a diversion program for a period of two years and ordered to pay various fines and fees. The trial court suspended imposition of sentence on count 8 and placed defendant on probation for three years under various terms and conditions. Defendant timely appealed and thereafter requested the issuance of a certificate of probable cause, which request the trial court granted.

## DISCUSSION

### A.     Standard of Review and Applicable Legal Principles

The California Supreme Court recently summarized the standard of review governing a ruling on a motion to suppress evidence based on a search. "'"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." [Citation.] On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision. [Citations.]' (*People v. Letner and*

5

*Tobin* (2010) 50 Cal.4th 99, 145 [112 Cal.Rptr.3d 746, 235 P.3d 62] (*Letner*).)" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 364-365.)

The California Supreme Court has also explained that "[i]n reviewing a search conducted pursuant to a warrant, an appellate court inquires 'whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1040 [99 Cal.Rptr.2d 1, 5 P.3d 68], citing *Illinois v. Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 103 S.Ct. 2317].)" (*People v. Carrington* (2009) 47 Cal.4th 145, 161.) The court amplified, "'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates, supra*, 462 U.S. at p. 238.) The magistrate's determination of probable cause is entitled to deferential review. (*People v. Kraft, supra*, 23 Cal.4th at p. 1041, citing *Illinois v. Gates, supra*, 462 U.S. at p. 236.) [¶] Probable cause sufficient for issuance of a warrant requires a showing that makes it "'substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought.'" (*People v. Frank* (1985) 38 Cal.3d 711, 744 [214 Cal.Rptr. 801, 700 P.2d 415], quoting *People v. Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130].) That showing must appear in the affidavit offered in support of the warrant. (*People v. Frank, supra*, 38 Cal.3d at p. 744.)" (*Ibid.*) Moreover, in reviewing the sufficiency of the facts upon which the magistrate or judge based his or her probable cause determination, we consider only the facts that appear within the "'four corners of the warrant affidavit.'" (*People v. Costello* (1988) 204 Cal.App.3d 431, 451, quoting *United States v. Rubio* (9th Cir. 1983) 727 F.2d 786, 795.)

As stated in *People v. Frank, supra,* 38 Cal.3d at page 744, "The affidavit must set forth more than the "'mere conclusion'" of the affiant that the items sought are located on the premises to be searched. (*Aguilar v. Texas* (1964) 378 U.S. 108, 113 [12 L.Ed.2d

6

723, 728, 84 S.Ct. 1509], overruled on other grounds *Illinois v. Gates*[, *supra*,] 462 U.S. [at p.] 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].)  The affidavit must present the magistrate with facts indicating the circumstances underlying the affiant's belief in order that the magistrate may judge their persuasiveness for himself.  (*Ibid.; Giordenello v. United States* (1958) 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245]; *Nathanson v. United States* (1933) 290 U.S. 41, 47 [78 L.Ed. 159, 161, 54 S.Ct. 11].)"

### B.    Analysis

Defendant contends that although the affidavit in support of the search warrant may have established that he was cultivating marijuana, it did not show that he was doing so illegally.  According to defendant, to justify the search warrant, Deputy Gaisford was required to include facts in his affidavit showing that defendant's conduct in cultivating marijuana was not in conformance with the Compassionate Use Act[3] and the Medical Marijuana Program Act.[4]  Defendant bases this contention on the Supreme Court's decision in *People v. Mower* (2002) 28 Cal.4th 457 (*Mower*), which, defendant argues, requires an affirmative factual showing in support of a search warrant that a defendant's cultivation of marijuana is not in compliance with the Compassionate Use Act.

---

[3]     Subdivision (d) of Health and Safety Code section 11362.5 provides,  "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

[4]     Health and Safety Code section 11362.7 et seq.  Section 11362.775 of that statutory scheme provides, "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."

Defendant's contention is based on his interpretation of the following language in *Mower, supra,* 28 Cal.4th 457: "To be sure, law enforcement officers must have probable cause before they lawfully may arrest a person for any crime. (See, e.g., *People v. Campa* (1984) 36 Cal.3d 870, 879 [206 Cal.Rptr.114, 686 P.2d 634]; see also Pen. Code, § 836.) Probable cause depends on all of the surrounding facts (see, e.g., *People v. Campa*, *supra*, 36 Cal.3d at p. 879 [206 Cal.Rptr.114, 686 P.2d 634]), including those that reveal a person's status as a qualified patient or primary caregiver under [Health and Safety Code] section 11362.5[, subdivision] (d)." (*Id.* at pp. 468-469.) Defendant reads that language as imposing an affirmative duty on investigating law enforcement officers to inquire about a suspect's status as a qualified patient or primary caregiver under the Compassionate Use Act. We disagree with defendant's interpretation of the quoted language from *Mower.*

In *Mower, supra,* 28 Cal.4th 457, the defendant was charged with possession and cultivation of marijuana in violation of Health and Safety Code sections 11357 and 11358. (*Id.* at p. 465.) On appeal and on review before the Supreme Court, the defendant contended that Health and Safety Code "section 11362.5[, subdivision] (d) grants a defendant 'complete' immunity from prosecution, shielding him not only from prosecution but even from arrest, and requiring reversal of his convictions because of the alleged failure by law enforcement officers to conduct an adequate investigation prior to his arrest." (*Id.* at pp. 466-467.)

In response to the defendant's contention, the Supreme Court framed the issue before it as follows: "The initial question that we address in this case is whether [Health and Safety Code] section 11362.5[, subdivision] (d) grants a defendant 'complete' immunity from prosecution, an immunity that assertedly would require reversal of a conviction for possession or cultivation of marijuana whenever law enforcement officers fail to conduct an adequate investigation of the defendant's status as a qualified patient or primary caregiver prior to his or her arrest." (*Id*. at 467.)

The court in *Mower, supra,* 28 Cal.4th 457 concluded that Health and Safety Code "section 11362.5[, subdivision] (d) does not confer the 'complete' immunity from

8

prosecution claimed by defendant. But [the court] also conclude[d] that, in light of its language and purpose, [Health and Safety Code] section 11362.5[, subdivision] (d) reasonably must be interpreted to grant a defendant a limited immunity from prosecution, which not only allows a defendant to raise his or her status as a qualified patient or primary caregiver as a defense at trial, but also permits a defendant to raise such status by moving to set aside an indictment or information prior to trial on the ground of the absence of reasonable or probable cause to believe that he or she is guilty." (*Id*. at p. 464.)

In reaching this conclusion, the court in *Mower, supra,* 28 Cal.4th 457 explained, "[C]ontrary to defendant's position, the requirement that law enforcement officers have probable cause for an arrest does not mean that [Health and Safety Code] section 11362.5[, subdivision] (d) must be interpreted to grant such persons immunity from arrest. It is well established that immunity from arrest is exceptional, and, when granted, ordinarily is granted expressly. (See generally 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 10, pp. 208-209, citing, among other provisions, Pen. Code, § 1334.4 [providing that '[i]f a person comes into this State in obedience to a subpoena . . . , he shall not, while in this State pursuant to the subpoena . . . , be subject to arrest . . . in connection with matters which arose before his entrance into this State under the subpoena'].) Plainly, [Health and Safety Code] section 11362.5[, subdivision] (d) does not expressly grant immunity from arrest. [¶] Neither can [Health and Safety Code] section 11362.5[, subdivision] (d) reasonably be read to grant immunity from arrest by implication. As the proponents of Proposition 215[5] declared in their rebuttal to the argument of the measure's opponents: 'Police officers can still arrest anyone for marijuana offenses.' (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) rebuttal to argument

---

[5]     "At the General Election held on November 5, 1996, the electors approved an initiative statute designated on the ballot as Proposition 215 and entitled Medical Use of Marijuana. In pertinent part, the measure added [Health & Safety Code] section 11362.5, the Compassionate Use Act of 1996." (*Mower, supra*, 28 Cal.4th at p. 463.)

against Prop. 215, p. 61.) Even when law enforcement officers believe that a person who 'possesses or cultivates marijuana' is a 'patient' or 'primary caregiver' acting on the 'recommendation or approval of a physician,' they may . . . have reason to believe that person does not possess or cultivate the substance 'for the personal medical purposes of the patient' ([Health & Saf. Code,] § 11362.5[, subd.] (d)).  [¶]  Thus, we conclude that section [Health and Safety Code] 11362.5[, subdivision] (d) does not grant any immunity from arrest, and *certainly no immunity that would require reversal of a conviction because of any alleged failure on the part of law enforcement officers to conduct an adequate investigation prior to arrest.*"  (*Id.* at p. 469, italics added.)

The holding in *Mower, supra,* 28 Cal.4th 457 on the immunity from arrest issue does not state or imply that law enforcement officers seeking a search warrant have an affirmative duty to investigate a suspect's status as a qualified patient or primary caregiver under the Compassionate Use Act prior to requesting that a warrant issue.  To the contrary, *Mower* makes clear that, although the Compassionate Use Act provides a defense at trial or a basis to move to set aside the indictment or information prior to trial, it does not shield a person suspected of possessing or cultivating marijuana from an investigation or arrest.  Therefore, given the holding in *Mower*, that Act cannot be interpreted to impose an affirmative duty on law enforcement officers to investigate a suspect's status as a qualified patient or primary caregiver under the Act prior to seeking a search warrant.

Our conclusion in this regard is supported by the decision in *People v. Fisher* (2002) 96 Cal.App.4th 1147 (*Fisher*).  In that case, a law enforcement officer participated in a "flyover" of the defendant's property and observed at least three marijuana plants behind the defendant's home.  (*Id.* at p. 1149.)  Based on that observation, a search warrant for the defendant's residence issued.  (*Ibid.*)  But before officers could execute the warrant, the defendant showed them a "'certificate'" purporting to be a physician's permission to possess marijuana for medical use in accordance with Health and Safety Code section 11362.5.  (*Ibid.*)  Because the officers believed a crime may nevertheless have been committed, they searched the residence and found additional marijuana, a cane

10

sword, and ammunition. (*Ibid.*) The defendant was charged with various counts of possession of marijuana, as well as possession of a sword and ammunition. (*Id.* at p. 1150.)

Defendant filed a motion to suppress pursuant to section 1538.5 on the ground that, once they were shown the certificate, the officers no longer had probable cause to search. (*Fisher, supra,* 96 Cal.App.4th at p. 1150.) The trial court denied the motion. Defendant was subsequently convicted on the charges unrelated to the possession of marijuana. (*Ibid.*)

On appeal, the defendant contended that once he showed the officers the certificate, they had a duty to secure the premises without searching it and to conduct a further investigation into his medical marijuana defense. (*Fisher, supra,* 96 Cal.App.4th at p. 1151.) In rejecting the defendant's argument, the court in *Fisher* reasoned: "'"It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant. [Citations.] . . . "'[T]he question is whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition, or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception and not its location which determines the question. . . .'" *Thus, where exceptions or provisos are not descriptive of the offense, or define it, but rather afford a matter of excuse, 'they are to be relied on in* [*the*] *defense.*' [Citations.]"' (*People v. Spry* (1997) 58 Cal.App.4th 1345, 1364 [68 Cal.Rptr.2d 691].) [¶] Nowhere in [Health and Safety Code] section 11362.5 is *any* criminal offense defined. Subdivision (d) of [Health and Safety Code] section 11362.5 does no more than refer to the offenses already defined in [Health and Safety Code] sections 11357 (possession of marijuana) and 11358 (cultivation of marijuana) and creates an exception to their applicability. Because the exception provided by subdivision (d) does not constitute any part of the definition of the offenses described by [Health and Safety Code] sections 11357 and 11358, the exception constitutes an

11

affirmative defense to be proven by the defendant at trial." (*Fisher, supra*, 96 Cal.App.4th at pp. 1151-1152.)

The court in *Fisher, supra*, 96 Cal.App.4th 1147 therefore concluded that the "[d]efendant's claim to the officers that he had a certificate that allowed him to legally possess marijuana for medicinal purposes asserted an affirmative defense. Investigation of the truth and legal effect of defenses to criminal charges is what motions and trials are for; to hold otherwise would create disorder and confusion. The defendant's argument has no merit." (*Id.* at p. 1152.)

Here, unlike in *Fisher, supra,* 96 Cal.App.4th 1147, Deputy Gaisforth had no information concerning defendant's status as a qualified patient or primary caregiver under either the Compassionate Use Act or the Medical Marijuana Program Act. Thus, the conclusion in *Fisher*—that investigating officers have no duty when obtaining and executing a search warrant to investigate a suspect's status as a patient or caregiver under the Compassionate Use Act—applies with even more compelling force in this case because Deputy Gaisford had no factual basis upon which to conclude that defendant may have had an affirmative defense to what were otherwise the criminal offenses of possessing and cultivating marijuana and had no independent duty to conduct an investigation into such a defense. Therefore, based on the facts set forth in the search warrant affidavit, including the fact that Deputy Gaisford detected a strong odor of "unburnt" marijuana emanating from defendant's garage and that defendant was operating the air conditioning at night to avoid detection by police, the search warrant in issue was based on probable cause and the suppression motion was properly denied. (See *State v. Davis* (Wash.App. 2014) 331 P.3d 115, 119 [medical use affirmative defense does not invalidate probable cause]; *State v. Senna* (Vt. 2013) 79 A.3d 45, 50-51 [trial court properly considered the odor of fresh marijuana emanating from the defendant's home in assessing probable cause to search, even if a medical marijuana exemption could be invoked as a defense]; *State v. Fry* (Wash. 2010) 228 P.3d 1, 7, fn. 3 [when an officer

12

trained and experienced in marijuana detection actually detects the odor of marijuana, that provides sufficient evidence to constitute probable cause to search even if defendant had medical documentation purporting to authorize his use].)

## DISPOSITION

The judgment of conviction is affirmed.

**CERTIFIED FOR PUBLICATION**


MOSK, J.


We concur:



TURNER, P. J.



KRIEGLER, J.


13