Filed 3/16/22  P. v. Hineman CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ZACKARY EUGENE HINEMAN et al.,<br><br>    Defendants and Respondents. | F079924<br><br>(Super. Ct. Nos. PCF335603A,<br>PCF335603B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Tim Ward, District Attorney, Dan Underwood, Chief Deputy District Attorney, Dave Alavezos, Assistant District Attorney, Jessica Weatherly, Adam Clare and Katie Denson, Deputy District Attorneys, for Plaintiff and Appellant.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Respondent, Zackary Eugene Hineman.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Respondent, Bryan Eugene Hineman.

-ooOoo-

Pursuant to Penal Code section 1238, subdivision (a)(7), the People appeal from an order dismissing the underlying case after the superior court granted codefendants

Bryan and Zackary Hineman's[1] pretrial motion to quash a search warrant and suppress evidence (Pen. Code, § 1538.5). The People contend the court erred in granting the defendants' motion because (1) there was sufficient probable cause to justify issuance of the warrant on its face and (2) the court erred by finding the affiant had made a misrepresentation without following the procedure set forth in *Franks v. Delaware* (1978) 438 U.S. 154 (*Franks*). We reverse the superior court's orders dismissing the case and granting defendants' motion to quash the search warrant and suppress evidence and remand for further proceedings.

## FACTS

*Search Warrant*

On May 19, 2016, a search warrant was issued by a magistrate upon an affidavit of Detective Enrique Lara. The warrant authorized the search of the defendants' residence for marijuana and paraphernalia associated with possession, packaging, and/or sale of marijuana; marijuana clandestine laboratory paraphernalia; and items used to cultivate marijuana. On the day it was issued, the warrant was executed by Lara.

### *Lara's Statement of Expertise in Support of the Warrant*

In his application for the search warrant, Lara affied that he graduated from the police academy in 2012 and began working as a peace officer with the Porterville Police Department in 2013. He investigated various types of offenses, including narcotics and drug offenses. In 2015, he was assigned as a detective with the Porterville Police Department's Narcotics Investigation Unit where he had conducted controlled narcotics purchases and conducted numerous hours of surveillance of subjects suspected of selling narcotics. Lara was a member of the California Narcotic Officers' Association and had logged 24 hours of drug abuse recognition training; 24 hours of training by the California Narcotic Officers' Association on topics including crystal marijuana drug trends,

---

[1] Because Bryan and Zackary share a last name, we refer to them in this opinion by their first names when not collectively referred to as "defendants." This is in the interest of brevity and clarity only, and no disrespect is intended.

2.

interrogation techniques, emerging drug trends, and butane hash oil; 12 hours of search and seizure training; 16 hours of search warrant training; eight hours of honey-oil marijuana extraction training; eight hours of medical marijuana training; and 80 hours of narcotics investigations training by the Orange County Sheriff's Department.

### *Lara's Probable Cause Statement in Support of the Warrant*

We summarize Lara's statement of probable cause. On May 19, 2016, Lara responded to Bryan and Zackary's residence "due to a report of marijuana being possibly grown." He contacted Bryan and Zackary and informed them he was there to conduct a marijuana compliance check. Bryan and Zackary were cooperative and allowed Lara to view the marijuana grow.

Lara observed a fenced area in the backyard, wherein multiple marijuana plants and vegetables were growing. A medical marijuana recommendation for Zackary was affixed to the fence that did not specify a limit on the amount of processed marijuana he was allowed to possess or how many marijuana plants he was allowed to cultivate.

Lara counted 20 marijuana plants inside the garden. He then asked Zackary about how often he consumed marijuana, and Zackary responded he smoked approximately 15 times per day, seven days per week. Lara affied, "Based on Zackary's statement I estimated that Zackary uses approximately 420 grams of marijuana a month, and 5,040 grams of marijuana a year, which is equivalent to approximately 11 pounds." Lara further affied, "Based on my training and experience, I know that one marijuana plant will yield approximately 2-3 pounds of marijuana." Lara concluded, "Being that Zackary possessed 20 marijuana plants, I estimated his yield would be between approximately 40-60 pounds; which exceeds his need by approximately 29-49 pounds."

Lara asked Zackary if he had any processed marijuana, and Zackary showed Lara three small plastic containers containing about a gram each that Zackary said he purchased from a dispensary.

Bryan told Lara he did not possess a medical marijuana recommendation and assisted Zackary with the cultivation of the marijuana plants.

3.

Based on the statements, Lara performed a "protective sweep" of the residence and located a marijuana bong in the living room. A female who was also present at the residence informed Lara she obtained marijuana from Zackary and did not have a medical marijuana recommendation. The female consented to a search of the residence, and detectives located jars of processed marijuana next to Bryan's bed. The detectives then secured the residence in anticipation of a search warrant.

Lara affied, "Based on the abundance of marijuana plants located, and my training and experience, I believe Bryan and Zackary are involved in the illegal sales and cultivation of marijuana. I believe if this search warrant is granted upon execution of this search warrant, marijuana and paraphernalia associated with the sale of marijuana will be located and brought before this Court."

***Information***

As a result of the search warrant, police recovered processed marijuana in Bryan's bedroom, butane honey oil in a pantry, butane honey oil manufacturing paraphernalia in a backyard shed, and marijuana and a digital scale in Zackary's bedroom.

The information charged Zackary and Bryan with maintaining place for selling or using marijuana (Health & Saf. Code, § 11366; count 2); possession of marijuana for sale (Health & Saf. Code, § 11359, subd. (b); count 4); and planting, harvesting, or processing marijuana (Health & Saf. Code, § 11358, subd. (c); count 5). The information further charged only Zackary with manufacturing honey oil (Health & Saf. Code, § 11379.6, subd. (a); count 1) and only Bryan with allowing place for preparing or storing controlled substance (Health & Saf. Code, § 11366.5, subd. (a); count 3).

Bryan thereafter filed a motion to set aside the information (Pen. Code, § 995), and the court granted it as to counts 2 and 3 and dismissed those counts as to Bryan.

***Motion to Quash the Search Warrant***

On March 15, 2019, Bryan filed a document captioned "MOTION TO QUASH THE SEARCH WARRANT PURSANT TO PENAL CODE SECTION 1538.5," joined by Zackary. The defendants sought to suppress the evidence obtained pursuant to the

4.

search warrant as well as the "protective sweep." The defendants asserted in the motion that Lara's calculation of how much marijuana Zackary consumed was insufficient because Lara did not know the amount of marijuana Zackary used per dose and that Lara's estimate of how much marijuana the plants would yield was "plainly and patently absurd" (emphasis omitted) and "equivalent to counting chickens before the eggs have hatched, and being confident that each egg would produce multiple chickens."

The defendants asserted that "the warrant was sufficient on its face to support the search and seizure of the marijuana plants," but "the probable cause supporting the search warrant was vitiated by the officer's illegal observations" and the warrant was "tainted by the officer's illegal conduct." The defendants further stated, "the officer's statements made on the affidavit were made with reckless disregard for the truth." Citing *Franks*, the defendants asserted the reckless statements must be excised from the warrant and asserted that without them, the search warrant lacked sufficient probable cause to the support the issuance of the search warrant.

At the hearing on the motion to quash on May 2, 2019, the prosecutor asserted that the court was required, pursuant to *Franks*, to first determine whether the defendants had made a proper showing justifying their entitlement to an evidentiary hearing based on their assertions Lara made statements in reckless disregard for the truth. The court trailed the matter to review the file.[2]

Upon the case being recalled, the court stated its initial position on the motion:

> "… In my reading of … [Lara's] statement of probable cause in
> support of the affidavit for the warrant, it's my understanding that the
> officer went to the residence and entered the residence with consent. Okay.
> In other words, he was allowed to go in. There was no warrant. I don't
> think there's any issue that he was given consent. He went in. Both

---

[2] A motion brought pursuant to Penal Code section 1538.5 "should first be heard by the magistrate who issued the search warrant if there is a warrant." (Pen. Code, § 1538.5, subd. (b).) This did not happen in the present case. According to the prosecutor, the magistrate who issued the search warrant was a visiting judge.

individuals cooperated.  They gave statements.  They gave statements mainly concerning their personal use of marijuana.

"Then at the conclusion of the statements and the officers' review of what was found—and marijuana may have been found in excess of 20 plants.  But based on the statements given by the Defendants and a third party who was present there at the residence, it was that marijuana was present, but it was being used for personal use.  That's the statements that were given.  Other than the marijuana being found, there was no other evidence.  The officer then states based on that, it was his belief that the individuals were involved in the illegal sales and cultivation of marijuana.

"So it may have been true regarding illegal cultivation technically; but as to sales, I don't see any evidence of that.  So I have a problem with that conclusion."

In response to the court's comments, the prosecutor explained that the People's position was that the affiant's statement was "not necessarily that there was evidence found of sales, but that the evidence found tended to make the officer believe, based on his training and experience, that there might be other items of sale within the residence." The prosecutor went on to say, "based on Defendant Zackary Hineman's admission as to the amount he uses contrasted with the amount of viable marijuana plants found at the residence, essentially the math didn't add up."  In response, the court asked the prosecutor:  "But isn't that more just speculation on [Lara's] part?" to which the prosecutor replied, "I wouldn't say speculation.  His training and experience does allow him to testify as to how much marijuana plants can yield and as to what an average dose would be.  And all his training and experience is laid out in the warrant.  He is an experienced officer in this type of investigation."

Counsel for Zackary argued that Lara had essentially "replac[ed] the judgment of the medical doctor with [Lara's] own judgment that [the amount of marijuana Zackary possessed was] too much."  Counsel for Bryan added that "the statements that [Lara] makes, the calculations he makes, are missing some portions of the algebra …, and also the statements he makes are patently dubious at best."

6.

The prosecutor responded by saying that because the defense was asserting the affidavit was missing math and/or that the affiant made a misstatement, the proper procedure was for the court to conduct an evidentiary hearing, where the defense could present evidence on the alleged misstatements or any evidence regarding their possible medical marijuana recommendations. The prosecutor noted that without an evidentiary hearing, argument should be limited to the four corners of the affidavit.

The court stated it did not believe there was any evidence to support Lara's representation that the marijuana was possessed for sale, and it "was a misrepresentation to the magistrate." The court went on to comment that not all marijuana plants produce. The prosecutor again impressed upon the court that in order to make such findings, an evidentiary hearing would need to be conducted "where the officer can be present and explain his rationale if he's—if he's sort of alleged to have misled the Court in this case." The court again stated that Lara's representation to the magistrate that the possession of the marijuana was for the purpose of sales was without foundation. The prosecutor noted "[t]he foundation was based on the amount of plants contrasted with the Defendants' admitted usage," to which the court responded that it was an "improper conclusion." The prosecutor again argued the proper procedure would be to have an evidentiary hearing and that the warrant was still valid "based on illegal cultivation given that a non-medical marijuana person is aiding a medical marijuana alleged patient in making too much marijuana based on his own admitted consumption."

The court granted the motion.

*Dismissal*

On July 19, 2019, the prosecutor indicated the People were unable to proceed based on the court's ruling granting the motion to quash and suppress evidence. The court dismissed the matter pursuant to Penal Code section 1385 without prejudice, and the People pursued the present appeal.

**DISCUSSION**

The People's position that the court's ruling was error is based on their contention that (1) the affidavit contained sufficient probable cause on its face to justify issuance of the warrant and (2) to the extent the trial court relied on a finding Lara made a "misrepresentation" to the magistrate, it failed to comply with the procedures set forth in *Franks* required in order to grant the motion on that ground. We agree with the People on both points.

## I. Facial Sufficiency of the Warrant

In reviewing a search conducted pursuant to a warrant, an appellate court inquires whether the magistrate had a substantial basis for determining whether there existed probable cause for the search as a matter of law. (*People v. Carrington* (2009) 47 Cal.4th 145, 161.) Probable cause exists for a search warrant when there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. (*Illinois v. Gates* (1983) 462 U.S. 213, 238.) " 'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " (*People v. Superior Court* (*Corona*) (1981) 30 Cal.3d 193, 203–204, quoting *United States v. Ventresca* (1965) 380 U.S. 102, 109.)

Here, we conclude the search warrant affidavit gave the magistrate a substantial basis for concluding a fair probability existed that evidence of illegal cultivation and sales was present at the residence. Under California law at the time of the search of the defendants' residence, it was "a crime to possess marijuana ([Health & Saf. Code,] § 11357), to cultivate, harvest, dry, or process it ([Health & Saf. Code,] § 11358), to possess it for sale ([Health & Saf. Code,] § 11359), to transport, import, sell, administer, or furnish it ([Health & Saf. Code,] § 11360), or to give it away (*ibid.*)." (*People v. Dowl* (2013) 57 Cal.4th 1079, 1085). The Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5) allowed a qualified patient and his or her qualified caregiver to possess and cultivate marijuana for the patient's personal medical use (*People v.*

8.

*Urziceanu* (2005) 132 Cal.App.4th 747, 772–773), creating a "a limited defense" to the laws outlawing those acts (*Kirby v. County of Fresno* (2015) 242 Cal.App.4th 940, 952). The Medical Marijuana Program Act of 2003 (MMP) (Health & Saf. Code, § 11362.7 et seq.) further created an "affirmative defense" allowing collective cultivation of marijuana, exempting qualifying patients and qualifying caregivers who collectively or cooperatively cultivated marijuana for medical purposes from criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substance for sale, and the laws declaring the use of property for these purposes a nuisance. (*People v. Urziceanu*, at pp. 785–786.)

In the present case, while Zackary presented a medical marijuana recommendation,[3] Lara's observations supported an inference, based on Zackary's own statement, that the amount Zackary and Bryan were cultivating was substantially more than what Zackary required for personal use, exceeding the scope of the medical marijuana laws in place at the time of the search. We reject Bryan's argument that this inference was not supported by sufficient facts and thus did not constitute probable cause that evidence of illegal activity would be recovered. While mere suspicions or

---

**3**    The parties address the cases, *People v. Fisher* (2002) 96 Cal.App.4th 1147 and *People v. Clark* (2014) 230 Cal.App.4th 490, which discuss the general proposition that under the law in effect at the time of the events of this case, individuals who possessed valid medical marijuana recommendations and thus an affirmative defense to certain offenses were not shielded from investigation, and that officers were not required to investigate an individual's possible status as a medical marijuana patient before seeking a search warrant for plants. Bryan argues the cases are distinguishable because in both cases, the search warrants were issued without law enforcement's knowledge that the subjects possessed medical marijuana recommendations; whereas, in the present case, Lara knew of Zackary's recommendation before seeking to obtain a search warrant. We do not agree with Bryan that this is a material distinction as applied to the present case. Where, as here, law enforcement legally observes evidence that a subject is acting outside the allowances of the medical marijuana laws, there is no authority we are aware of nor that Bryan cites, that stands for the proposition law enforcement are not permitted to continue their investigation, including legally obtaining a search warrant, to uncover evidence of any offenses the subject may have committed.

conclusions of the affiant are insufficient (*People v. Smith* (1976) 17 Cal.3d 845, 850), "law enforcement officers may draw upon their expertise to interpret the facts in a search warrant application, and such expertise may be considered by the magistrate as a factor supporting probable cause" (*People v. Nicholls* (2008) 159 Cal.App.4th 703, 711; see *U.S. v. Chavez-Miranda* (2002) 306 F.3d 973, 978 ["issuing judges may rely on the training and experience of affiant police officers"]).

Here, while the defendants note the affidavit did not include a statement regarding how much Zackary smoked during each of the 15 times he smoked per day, Lara could use his training and experience to estimate the amount Zackary used per dose based on his knowledge of the average size of a marijuana cigarette. We note Lara appears to have estimated that Zackary used one gram of marijuana per use. Considering Zackary stated he smoked 15 times per day, and only had three grams of processed marijuana on hand, this was a liberal estimate. Lara could also use his training and experience to estimate the amount of processed marijuana each plant he observed could produce. Lara had many hours of training on several topics related to marijuana, as well as on the job experience investigating drug offenses. Lara could reasonably use these estimates to conclude the amount that would be produced by the plants substantially exceeded the amount Zackary would require for his own personal use. Finally, Lara could use his training and experience to represent to the magistrate this large discrepancy was evidence that Zackary and Bryan might be involved in illegal sales. There was no evidence the grow was a valid cooperative under the CUA or any other explanation for the discrepancy. The magistrate could reasonably rely on Lara's estimates to conclude there was a fair probability there would be evidence of illegal sales of marijuana in the residence.

Bryan asserts the trial court was permitted to reject the affiant's opinion that the grow would yield 40 to 60 pounds as "speculation." In so arguing, Bryan ignores the role of the court hearing a suppression motion involving a search warrant. "In reviewing the magistrate's determination to issue the warrant, it is settled that 'the warrant can be upset only if the affidavit fails as a matter of law [under the standard announced in *Illinois v.*

*Gates*, *supra*, 462 U.S. at p. 238] to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony.' " (*People v. Hobbs* (1994) 7 Cal.4th 948, 975.) We have explained the magistrate could rely on Lara's training and experience to justify his estimate of how much marijuana the plants would produce. Thus, contrary to Bryan's position, the court hearing the suppression motion was not permitted to substitute its credibility determination or factual conclusions for the magistrate's.

We conclude the affidavit contained sufficient probable cause to support the magistrate's issuance of the search warrant, and, as such, the trial court erred by granting the defendants' motion to quash the search warrant and suppress evidence.

## II.     Sub-facial Challenge to the Warrant (*Franks* Procedure)

The People also contend the trial court erred because it appeared to make a finding that the affiant made a "misrepresentation" to the magistrate, and such a finding was improper absent following the procedure set forth in *Franks*. We agree. To the extent the trial court relied on its conclusion the affiant had made a "misrepresentation" to the magistrate and that excising that misrepresentation justified granting the defendants' motion, we agree with the People that this was error because the trial court did not follow the procedure set forth in *Franks*.

When a defendant "makes a substantial preliminary showing[4] [(1)] that a false statement knowingly and intentionally, or with reckless disregard for the truth, was

---

**4**     To meet his or her burden to obtain a *Franks* hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." (*Franks*, *supra*, 438 U.S. at p. 171.) "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient." (*Ibid.*)

included by the affiant in the warrant affidavit, and [(2)] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (*Franks*, *supra*, 438 U.S. at pp. 155–156.) The defendant then has the burden to establish perjury or reckless disregard by a preponderance of the evidence. (*Id*. at p. 156.) If the remaining content of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. (*Ibid*.) The *Franks* procedure applies when the challenger is asserting the affiant made a material deliberate or reckless omission as well. (*People v. Kurland* (1980) 28 Cal.3d 376, 387–390.)

Here, in the defendants' motion, the defendants conceded that the affidavit was sufficient to establish probable cause on its face while arguing, citing *Franks*, that the affiant had made statements with reckless disregard for the truth, the statements must be excised from the probable cause statement, and the court must conclude that, without the statements, the warrant was not sufficient. Specifically, the defendants alleged Lara's estimates of how much marijuana Zackary would use and how much marijuana the plants would produce were false. The defendants attached no affidavits to their motion and did not make an offer of proof indicating what evidence they would produce at an evidentiary hearing to support their contentions. At the hearing, the trial court made no express finding regarding whether the defendants had made a showing sufficient to warrant an evidentiary hearing and did not hold such a hearing. It found, however, that Lara had made a misrepresentation to the magistrate, and appeared to rely on this finding to grant the motion. Even assuming the court made an implicit finding the defendants' had met their burden to warrant an evidentiary hearing, failing to hold one where the defendants would be required to prove that Lara made a material intentional or reckless misstatement or omission of facts and where the People would be permitted to respond was error.

Zackary, joined by Bryan, contends the defendants met their burden to show the affiant had made "reckless or deliberate material misstatements of fact" in his affidavit,

12.

and that no evidentiary *Franks* hearing was required because the People agreed the opinion regarding the yield of the marijuana grow was incorrect. Assuming without deciding that the defendants had met their burden to warrant an evidentiary hearing, we reject Zackary's contention that no hearing was required. Zackary's contention the People conceded to the alleged falsity of Lara's statement is based on the following exchange:

> "THE COURT: To me, [the representation the marijuana possessed was for sales] was a misrepresentation to the magistrate.
>
> "The other factor I considered is as to the marijuana plants; just because they're growing doesn't mean they're going to be productive. They can be male or female. My understanding is that some plants don't produce any, let's say, fruit of the plant at all.
>
> "So just because you have 20 marijuana plants doesn't mean you have 20 marijuana-producing plants.
>
> "Am I correct?
>
> "[THE PROSECUTOR]: I would say that's correct, Your Honor. And that would be true. And, again, this all would come out during a traversal hearing where the officer can be present and explain his rationale if he's—if he's sort of alleged to have misled the Court in this case."

We do not agree with Zackary that the above constitutes a concession by the People equal to a stipulation that no *Franks* evidentiary hearing was required, particularly in context of the totality of the record. Just because the prosecutor agreed with the court that not all plants may have been producing plants, it does not follow that he also agreed the alleged misstatement was a *material* falsity necessary to the existence of probable cause. As the prosecutor suggested, at an evidentiary hearing, information could be elicited such as whether the affiant based his opinion the marijuana being grown exceeded Zackary's need solely on the opinion all plants were producing or whether his opinion would still be the same considering other circumstances. Further, the prosecutor asserted multiple times that the court needed to determine whether the defendants had made a sufficient

13.

showing Lara had made material deliberate or reckless misrepresentations or omissions, and if it made such a finding, to hold an evidentiary hearing where the defendants would have the burden of proof and where Lara would be able to testify. The trial court did not address these assertions before granting the motion.

To the extent the trial court relied on its finding Lara had made a misrepresentation to conclude the affidavit was insufficient, the trial court erred by failing to follow the procedure set forth in *Franks*.

## DISPOSITION

The trial court's orders dismissing Tulare County Superior Court case Nos. PCF335603A and PCV335603B and granting defendants' suppression motion are reversed. The matter is remanded for further proceedings consistent with the reasoning in this opinion.


                                                                    DE SANTOS, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.


14.